# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

ST. CHARLES SURGICAL HOSPITAL, LLC,   *
    Plaintiff,   *
       *   Civil Action No.
versus   *
       *   Section
LOUISIANA HEALTH SERVICE &   *
INDEMNITY COMPANY D/B/A BLUE   *   Magistrate
CROSS AND BLUE SHIELD   *
OF LOUISIANA and   *
BLUE CROSS & BLUE SHIELD OF   *
LOUISIANA, INC.,   *
    Defendants.   *
       *

******************************************

## NOTICE OF REMOVAL

TO THE HONORABLE JUDGES OF THE EASTERN DISTRICT OF LOUISIANA:

Defendants Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana and Blue Cross and Blue Shield of Louisiana, Inc.[1] (collectively, "BCBSLA") file this Notice of Removal, and to the extent required, reserve any and all rights, objections, defenses, and exceptions.

Title 28 U.S.C. § 1446 requires that a short and plain statement of the grounds for removal accompany any notice of removal. This case is removable under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). In addition, this action may be removed pursuant to 28 U.S.C. § 1441, because the controversy arises under the laws of the United States, specifically the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the

---

[1] As will be discussed below, there is no such entity as Blue Cross and Blue Shield of Louisiana, Inc. However, since this fictitious entity is named by Plaintiff in the lawsuit being removed, Defendants have identified it here.

1

Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, and federal common law, and therefore, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  As will be discussed below, Plaintiff St. Charles Surgical Hospital, L.L.C. ("SCSH") asserts claims to benefits due their patients by virtue of assignments of benefits purportedly given to them by their patients.  In many cases, the benefits assigned to them are benefits due under health benefit plans subject to FEHBA or ERISA.  Accordingly, such claims provide a basis for removal of the entire action.  *See, e.g., Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337-338 & n.11 (5th Cir. 1999).

This removal is timely because it is filed within 30 days of SCSH's service of their petition for damages on BCBSLA.

In support of this removal, BCBSLA avers as follows:

## I.      Parties

1.      Plaintiff SCSH is a surgical hospital located in New Orleans, Louisiana.  It is organized as a Louisiana limited-liability company.  On information and belief, its members are individuals domiciled in the state of Louisiana.

2.      Defendant BCBSLA is a not-for-profit mutual insurance company organized under the laws of the state of Louisiana with its principle place of business in Baton Rouge, Louisiana.  There is no such company as "Blue Cross and Blue Shield of Louisiana, Inc." according to the Louisiana Secretary of State.

## II.     Procedural Background

3.      SCSH filed its original petition against BCBSLA on December 29, 2017 in the Civil District Court for the Parish of Orleans, styled *St. Charles Surgical Hospital, L.L.C. versus Louisiana Health Service and Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana*

*and Blue Cross & Blue Shield of Louisiana, Inc.* and bearing civil action number 2017-12476 (the "Petition").

4.       SCSH served BCBSLA on January 22, 2018 through its registered agent.  A copy of all pleadings served on BCBSLA is attached hereto as Exhibit "A."

5.       The time to remove commence upon service.  28 U.S.C. § 1446(b); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 354 (1999) (time to remove commences upon formal service of pleading giving rise to right to remove).  BCBSLA is removing this matter within 30 days of service.

**III.    Factual Background**

6.       SCSH claims to have provided medical treatment to certain patients, who SCSH refers to as "Patients."  Pet. ¶ 3.  SCSH asserts that "[o]n or about the date of treatment, the Patients of Plaintiff execute an Assignment of Benefits in accordance with La. R.S. 40:2010, authorizing direct payment to the Plaintiff for all insurance and/or other plan or other health benefits that would have otherwise been payable to the Plaintiff [*sic*]."  *Id.* ¶ 6

7.       SCSH asserts that the Patients "are insureds of Defendants."  *Id.* ¶ 7.

8.       SCSH asserts that these assignments are provided to BCBSLA before BCBSLA makes payment pursuant to the Patients' health benefits plans.  *Id.* ¶ 8.

9.       SCSH asserts that the assignments it collects from the Patients are "in accordance with La. R.S. 40:2010."  *Id.* ¶ 6.

10.      SCSH quotes this statute, which states that the assignment must be honored and benefits paid directly to the hospital who takes such an assignment.  *Id.* ¶ 2.

11.      SCSH asserts that BCBSLA paid benefits directly to the Patients in contravention of the assignments and La. R.S. 40:2010.  *Id.* ¶¶ 3, 9, 13.

2336046.1

12.     SCSH does not identify the Patients at issue in the lawsuit in order to preserve any protected patient information.  Pet. ¶ 3 & n.1.

13.     SCSH provided counsel for BCBSLA a spreadsheet of the Patients it contends are at issue in the litigation on February 2, 2018.  A redacted copy of this spreadsheet is attached hereto as Exhibit "B."

14.     While this matter is removed within 30 days of service under 28 U.S.C. § 1446(b)(1), the spreadsheet at Exhibit B – which revealed to BCBSLA for the first time that some Patients are enrolled in FEHBA and ERISA-governed health benefit plans – is an "other paper from which it may first be ascertained that the case is" removable.  28 U.S.C. § 1446(b)(3). Accordingly, this removal is also timely as it is made within 30 days of BCBSLA's receipt of the spreadsheet.

15.     Exhibit B provides a "subscriber ID" for each Patient SCSH asserts is at issue in the Petition.  The subscriber ID can be used to determine the plan or group to which the patient belongs.  *See* "Quick Guide to Blue Cross and/or Blue Shield Member ID Cards" at 3-4 (available at https://www.bcbst.com/providers/Card-Quick-Guide.pdf) (last viewed on February 12, 2018).[2]

16.     Individuals whose health benefits are through the Service Benefit Plan, have a subscriber ID that begins with "R" and then has eight digits.  As described below, the Service

---

[2] *See also* "Quick Guide to Blue Cross and Blue Shield Member ID Cards" at 3-5 (available at https://www.bcbstx.com/provider/pdf/id-card-quick-guide.pdf) (last viewed on February 12, 2018).

Benefit Plan is a federally-sponsored health benefit plan for federal employees, retirees, and their dependents and was created pursuant to and is governed by FEHBA.[3]

17.     SCSH includes five Service Benefit Plan enrollees as Patients on Exhibit B: L.G. (subscriber ID Rxxxx6367), S.L. (subscriber ID Rxxxx5285), T.M. (subscriber ID Rxxxx4678), K.N. (subscriber ID Rxxxx8897), and J.V. (subscriber ID Rxxxx3037).[4]

18.     In addition, patient C.M. (subscriber ID XUAxxxxx1183) is identified on Exhibit B.[5]  At all pertinent times, C.M. was a member of the health benefit plan issued by the Louisiana SPCA to provide medical, surgical, or hospital benefits to its employees and their dependents. The Louisiana SPCA is engaged in interstate commerce.

## IV.     Federal Officer Removal

### A.     Background on FEHBA and the Service Benefit Plan

19.     The Service Benefit Plan is created by a federal government contract between the United States Office of Personnel Management ("OPM") and the Blue Cross and Blue Shield Association ("BCBSA") pursuant to FEHBA, 5 U.S.C. §§ 8901-14.  *See generally* 2013 Service Benefit Plan Master Contract, attached hereto as Exhibit C (hereinafter "Master Contract"); *see also* 2016 Statement of Benefits for the Service Benefit Plan at 5, attached hereto as Exhibit D (hereinafter "2016 Statement of Benefits"); 2017 Statement of Benefits for the Service Benefit

---

[3] The Service Benefit Plan is sometimes referred to by the nickname "Federal Employee Program" or "FEP."

[4] In each case, the Service Benefit Plan enrollees are identified by their initials and by redacted subscriber ID numbers.

[5] This enrollee is identified by her initials and by a redacted subscriber ID number.

2336046.1

Plan at 5, attached hereto as Exhibit E (hereinafter "2017 Statement of Benefits").[6]   Neither OPM nor BCBSA are parties to this case.

20.      In contracting to establish the Service Benefit Plan, BCBSA acts as agent for and on behalf of local Blue Cross and Blue Shield companies that administer the Service Benefit Plan in their respective localities; BCBSLA is such a company and administers the Service Benefit Plan in Louisiana.  *See, e.g.*, 2017 Statement of Benefits at 5; *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1092 (10th Cir. 2015).

21.      FEHBA and the regulations implementing it set forth a comprehensive framework for the supervision and administration of FEHBA plans, including the Service Benefit Plan.

a.      Under FEHBA, OPM is vested with sole authority to contract for the provision of health plans, to determine the benefit structure of each plan, and to promulgate the official description of a plan's terms in a "Statement of Benefits" (sometimes called a "brochure").  *See* 5 U.S.C. §§ 8902(a), (d), 8907.  The Statement of Benefits is incorporated into the government contract between OPM and BCBSA.  *See* Master Contract § 2.2(a); *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 684 (2006).

b.      Congress delegated solely to OPM the authority to police the conduct and practices of FEHBA carriers, and the agency has promulgated extensive regulations on the topic.  *See* 5 U.S.C. §§ 8902(e), 8910, 8913(a); 48 C.F.R. Ch. 16; *see also Bridges v. Blue Cross & Blue*

---

[6] As reflected in Exhibit B, the medical services at issue in this case were allegedly rendered in 2016 and 2017.  Approximately every five years, the OPM-BCBSA contract is restated in what we call a "Master Contract."  The most recent version is from 2013, and that is the Master Contract relevant in this case.  In other years, OPM and BCBSA entered into amendments to the most recent version of the Master Contract.  For the sake of completeness, the 2014, 2015, 2016, and 2017 annual amendments to the 2013 Master Contract are attached as Exhibits F through I, respectively.

*Shield Ass'n*, 935 F. Supp. 37, 42-43 (D.D.C. 1996); *Kight v. Kaiser Found. Health Plans of the Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 342 (E.D. Va. 1999).

      c.      FEHBA, OPM's regulations, and the Statement of Benefits establish that the exclusive remedies to challenge a carrier's refusal to pay benefits is a request for reconsideration to the carrier, followed by an administrative appeal at OPM, followed by judicial review in federal court of OPM's decision. *See* 5 U.S.C. §§ 8902(j), 8912; 5 C.F.R. §§ 890.105, 890.107; 2016 Statement of Benefits at 133-34; 2017 Statement of Benefits at 136-37. The OPM administrative remedy is open to "medical providers" acting pursuant to an authorization from the enrollee. *See* 2016 Statement of Benefits at 134; 2017 Statement of Benefits at 137; *see also* 5 C.F.R. § 890.105(a)(2). OPM prohibits lawsuits against a FEHBA carrier or its subcontractors relating to the provision of benefits under a FEHBA plan. 5 C.F.R. § 890.107(c); *see also* 2016 Statement of Benefits at 134; 2017 Statement of Benefits at 137.

      d.      The Service Benefit Plan's Statement of Benefits – which, again, is part of the contract with OPM – explicit deals with assignments of benefits. The Statement of Benefits provides that the Blue Cross and Blue Shield entities administering the Service Benefit Plan "reserve the right to pay you, the enrollee, directly for all covered services." 2016 Statement of Benefits at 144; 2017 Statement of Benefits at 148. Similarly, the contract itself states that "the Carrier reserves the right to pay the Member directly for all covered services . . . ." Master Contract § 2.3(j).

      e.      Under FEHBA, the federal government pays for the majority of the premium cost for each enrollee, with the enrollee paying the remainder. *See* 5 U.S.C. § 8906(b)(1), (b)(2), (f); *Helfrich*, 804 F.3d at 1092. All premiums are deposited initially into the Employees Health Benefits Fund within the U.S. Treasury. 5 U.S.C. § 8909(a); *Helfrich*, 804

F.3d at 1092.  Carriers of experience-rated FEHBA plans – such as the Service Benefit Plan (*see, e.g.*, Master Contract § 3.3(a)) – do not receive the premiums as they are paid into the Employees Health Benefits Fund in the federal Treasury.  Instead, the premiums for the Service Benefit Plan are placed into a special letter of credit account within the U.S. Treasury fund.  48 C.F.R. § 1632.170(b)(1); *see also id*. § 1652.232-71(d).   The Blue Cross and Blue Shield entities administering the Service Benefit Plan, such as BCBSLA, then draw directly from the letter of credit account in the Treasury fund to pay for benefit claims and allowable administrative expenses.  48 C.F.R. §§ 1632.170(b), 1652.216-71(b); *Helfrich*, 804 F.3d at 1092.  Any Service Benefit Plan premiums that are not used to pay benefits and administrative expenses remain the property of the government, and are not paid to the carrier.  *See, e.g.*, Master Contract § 3.3; *Helfrich*, 804 F.3d at 1092; *see also Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, No. 3:13-CV-4946-B, 2015 U.S. Dist. LEXIS 54357, at *38 (N.D. Tex. Jan. 28, 2015), *aff'd*, 814 F.3d 242 (5th Cir. 2016).  An experience-rated carrier's profit, if any, comes from a separate, negotiated service charge.  *See Nat'l Ass'n of Postal Supervisors v. United States*, 21 Cl. Ct. 310, 315 (1990) ("The service charge is the only profit element . . . [an experience-rated] carrier may not make a profit on the premium charges themselves."), aff'd mem., 944 F.2d 859 (Fed. Cir. 1991); *see also* 48 C.F.R. § 1615.404-4; *Helfrich*, 804 F.3d at 1092.

   f.  FEHBA contains a broad preemption provision that states:  "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."  5 U.S.C. § 8902(m)(1) (2000) (as amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366).  "[U]nder § 8902(m)(1) as it now

reads, state law – whether consistent or inconsistent with federal plan provisions – is displaced on matters of 'coverage or benefits.'" *Empire*, 547 U.S. at 686. With this preemption provision, Congress sought to "strengthen the ability of national plans to offer uniform benefits and rates to enrollees regardless of where they may live." H.R. Rep. No. 105-374, at 9 (1997); *accord* S. Rep. No. 95-903, at 2 (1978) (legislative history of FEHBA's original preemption provision); *see also Empire*, 547 U.S. at 686; *Helfrich*, 804 F.3d at 1099. The Supreme Court recently emphasized that the phrase "relate to" in § 8902(m)(1) "'express[es] a broad pre-emptive purpose'" and is "notably 'expansive [in] sweep.'" *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S.Ct. 1190, 1197 (2017) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 384 (1992)) (alterations added in *Nevils*). The Supreme Court in *Nevils* also found that a broad reading of § 8902(m)(1) was appropriate in light of FEHBA's "statutory context and purpose." *Id*. The Court explained:

> FEHBA concerns benefits from a federal health insurance plan for federal employees that arise from a federal law in an area with a long history of federal involvement. Strong and distinctly federal interests are involved, in uniform administration of the program, free from state interference, particularly in regard to coverage, benefits, and payments.

*Id*. (internal quotation marks and citations omitted).

### B.    Removal Under the Federal Officer Removal Statue

22.    The federal officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes the removal of an action against "any officer (or person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

23.    As applied to government contractors such as BCBSLA, the statute has three requirements: (1) that BCBSLA be a "person;" (2) that it "acted pursuant to a federal officer's

directions and that a causal nexus exists between the defendant['s] actions under color of federal office and the plaintiff's claims;" and (3) that it assert a "colorable federal defense."  *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398, 400 (5th Cir. 1998) (citation omitted); *see also Bell v. Thornburg*, 743 F.3d 84 (5th Cir. 2014).

24.     Courts now routinely find that suits against entities administering the Service Benefit Plan are removable by the Plan's administrators under the Federal Officer Removal Statute.  *See Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237 (9th Cir. 2017) (Blue Cross Blue Shield entity administering the Service Benefit Plan properly invoked section 1442(a)(1)); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012) (same); *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross & Blue Shield of Fla, Inc.*, No. 03-15664, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005) (same); *Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 U.S. Dist. LEXIS 136244, at *10-17 (C.D. Cal. Sept. 30, 2016) (same); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life and Health Insurance Co.*, 169 F.Supp.3d 1058, 1063-1066 (S.D. Cal. 2016) (same); *Bell v. Blue Cross & Blue Shield of Okla.*, No. 5:14-CV-05046, 2014 U.S. Dist. LEXIS 155723 (W.D. Ark. Nov. 3, 2014) (same); *Ala. Dental Ass'n, v. Blue Cross & Blue Shield of Ala., Inc.*, No. 2:05-cv-01230-MEF, 2007 U.S. Dist. LEXIS 685, at *21-25 (M.D. Ala. Jan. 3, 2007) (same); *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 Fed. App'x 268 (5th Cir. 2014) (removal by Service Benefit Plan administrator under section 1442(a)(1) was objectively reasonable).

25.     The first element is satisfied as to BCBSLA because "corporate entities qualify as 'persons' under § 1442(a)(1)."  *Winters*, 149 F.3d at 398.

26.     The second factor is also met.  As pertinent to 28 U.S.C. § 1442(a)(1), a defendant is deemed to be sued for actions under the direction of a federal agency and federal officers

where, as is the case with BCBSLA's administration of the Service Benefit Plan and its alleged failure to pay SCSH directly, it is administering the terms of a federal government contract or federal program under the direct and detailed supervision of a federal agency. Government contractors may remove a case pursuant to the Federal Officer Removal Statute where "the acts for which they are being sued . . . occurred because of what they were asked to do by the Government," even if the acts were not "specifically contemplated by the government contract." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137, 138 (2d Cir. 2008). Here, BCBSLA (and other local Blue Cross and Blue Shield companies) "help the government fulfill the basic task of establishing a health benefits program for federal employees. OPM has direct and extensive control over these benefit contracts under the FEHBA." *Jacks*, 701 F.3d at 1233. "[T]he benefit payment process [is] a process over which OPM exerts regulatory control." *Id*. In this case, Plaintiff sues BCBSLA expressly because of actions taken in the course of administering the Service Benefit Plan – specifically, in allegedly failing to pay benefits directly to SCSH, despite the fact that the contract with OPM expressly gives BCBSLA the right to pay the enrollee in all instances. On this basis, SCSH's Petition is causally connected to BCBSLA's actions under the direction of a federal agency and its officers. *See id*. at 1230 n.3 (finding the requisite causal connection).

27.     As to the third requirement, BCBSLA has several colorable federal-law defenses. In this regard, the federal officer removal statute does not require BCBSLA to prove a defense is meritorious; instead, all that is required is to show that a defense is colorable. *Jacks*, 701 F.3d at 1233. These defenses include preemption, sovereign immunity, and displacement by federal common law.

28.     First, SCSH's state-law claims are preempted by FEHBA's express preemption

provision, 5 U.S.C. § 8902(m)(1), which provides that the terms of FEHBA contracts concerning benefits and payments shall supersede state law. *See* 5 U.S.C. § 8902(m)(1); *see also Empire,* 547 U.S. at 686; *Botsford v. Blue Cross & Blue Shield of Mont., Inc.,* 314 F.3d 390 (9th Cir. 2002). As noted above, the Supreme Court in *Nevils* recently held that the preemption provision should be construed broadly. Notably, as a result of the broadening of FEHBA's preemption provision in 1998, even if these contractual terms are consistent with the state laws on which SCSH relies, FEHBA preempts those state laws nonetheless. *See Empire*, 547 U.S. at 686. Here, the Service Benefit Plan's terms unambiguously provide an exclusive administrative mechanism for SCSH to raise a dispute about benefit payments, but SCSH has failed to use that mechanism and has filed this lawsuit instead. Separately, because that requirement is also in OPM's regulations, SCSH's lawsuit is precluded under traditional conflict preemption principles. Moreover, as discussed above, the Service Benefit Plan's terms specifically allow BCBSLA to issue payment to the enrollees in all instances, even when the provider has an assignment. These contractual terms plainly preempt La. R.S. 40:2010.

29. Second, sovereign immunity is also a colorable federal defense because any funds that would be used to pay the health benefits at issue come directly from the federal Treasury. Many courts have dismissed state-law claims against a Service Benefit Plan administrator on sovereign immunity grounds. *See Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 U.S. Dist. LEXIS 136244, at *17-20 (C.D. Cal. Sept. 30, 2016) (dismissing state law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp.3d 1058, 1070-71 (S.D. Cal. 2016) ("Any recovery against Blue Shield in this case would come from funds in the federal treasury. The United States cannot be sued without its consent

and the United States has not waived sovereign immunity in this case . . . ."); *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.,* No. 11-806, 2014 WL 4930443, at \*9-10 (E.D. La. Sept. 30, 2014) (dismissing state-law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Mentis El Paso, LLP* v. *Health Care Serv. Corp.,* 58 F.Supp.3d 745, 756 (W.D. Tex. 2014) (same); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.,* 995 F.Supp.2d 587 (N.D. Tex. 2014) (same) *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 F.App'x 268, 272 (5th Cir. 2014); *Jacks*, 701 F.3d at 1235.

30. Third, SCSH's state law claims are displaced by federal common law, which governs the federal contract at the heart of this case. *See Helfrich*, 804 F.3d at 1095-1104; *Jacks*, 701 F.3d at 1235.

31. The court in *Jacks* found each of these three defenses to be colorable for purposes of the federal officer removal statute. *Jacks*, 701 F.3d at 1235.

32. Because all the requirements are met, BCBSLA properly removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

## V.   Removal Based on Complete Preemption under ERISA and FEHBA

33. Aside from being removable under 28 U.S.C. § 1442(a)(1), this case also is removable pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction existing under 28 U.S.C. § 1331, because some of SCSH's claims are completely preempted by ERISA and some are complete preempted by FEHBA.

34. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the

defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

35.     In turn, original jurisdiction on the basis of a federal question exists whenever the action asserts a claim "arising under the Constitution, laws or treaties of the United States."  28 U.S.C. § 1331.

36.     Generally, a case "arises under" federal law only where a federal question appears on the face of the plaintiffs' well-pleaded complaint.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391-92 (1987).  Under that rule, a case generally cannot be removed on the grounds that the defendant raises a federal defense to a state law claim, including the federal defense of preemption.  *See Brown v. Connecticut General Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir. 1991).

37.     However, the well-pleaded complaint rule has an exception known as the complete preemption doctrine.  The doctrine states that when the preemptive force of a statute is "extraordinary," it "'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Caterpillar*, 482 U.S. at 393 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  Here, both ERISA and FEHBA – each of which contain an exclusive mechanism for addressing disputes about benefits – completely preempts SCSH's claims.

## A.     La. R.S. 40:2010

38.     To understand why complete preemption occurs here, it is important to understand that the funds at issue in this case are benefit payments under the plan terms, with those benefit payments having belonged to the Patient and (allegedly) having been assigned to SCSH.

2336046.1

39.     Notably, SCSH asserts a cause of action arising under La. R.S. 40:2010.  Pet. ¶¶ 1, 13.  SCSH asserts no other causes of action.

40.     The U.S. Court of Appeals for the Fifth Circuit previously examined La. R.S. 40:2010 in *Louisiana Health Service & Indemnity Co. v. Rapides Healthcare System*, 461 F.3d 529 (5th Cir. 2006) ("*Rapides*").

41.     In *Rapides*, the Fifth Circuit found that La. R.S. 40:2010 does not create a separate cause of action.  Rather, it merely provides for the transfer of the claim for benefits from the patient to the hospital.  As the Fifth Circuit explained:

> The assignment of benefits from the patient to the hospital results solely in the transfer of the cause of action provided by § 502(a) from the patient to the hospital.  The assignee takes what the assignor had; no more, no less.  ***The assignment statute merely passes the sole enforcement mechanism-ERISA § 502-from patient to hospital***; it does not impose any additional obligation on the ERISA plan administrator, ***nor does it create additional or separate means of enforcement***.

461 F.3d at 535 (emphasis added; footnotes omitted).

42.     Accordingly, while La. R.S. 40:2010 allows the patient to assign its right to receive health benefits to the hospital, the right itself – health benefits from the patient's health plan – does not change.  *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) ("We have recognized that an assignee takes all of the rights of the assignor, no greater and no less.  In other words, an assignee stands in the same position as its assignor stood." (internal quotations omitted)).

### B.     Complete Preemption under ERISA

43.     Where, as here, the assignee hospital is asserting the right to receive benefits under a plan governed by ERISA, such a claim is subject to complete preemption under ERISA

section 502, 29 U.S.C. § 1132.  *See Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009) ("A healthcare provider suing on the basis of assignment of ERISA rights, benefits or claims from a plan member must proceed under the procedures established by § 502(a), as the provider is seeking to enforce the terms of the plan."); *accord Center for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of Louisiana*, No. 11-806, 2016 WL 4208479, at *3 (E.D. La. Aug. 10, 2016) ("Under 29 U.S.C. § 1132(a), a civil enforcement action may be brought only by a plan participant, beneficiary, fiduciary, or the Secretary of Labor.  *A non-participant health care provider may not bring claims for benefits on its own behalf but must do so derivatively, relying on its patients' assignments of their benefits claims*." (footnotes omitted and emphasis added)).

### C. Complete Preemption under FEHBA

44.      FEHBA expressly states that OPM shall be the final arbiter of all benefit disputes under FEHBA plans.  *See* 5 U.S.C. § 8902(j).   Pursuant to that provision, and as noted above, OPM's regulations provide a detailed mechanism for challenging a denial of FEHBA benefits.  *See* 5 C.F.R. §§ 890.105, 890.107.   As noted above, this mechanism is available to medical providers.  As also addressed above, the regulations expressly require that any suit regarding FEHBA benefits must be brought against OPM only.  5 C.F.R. § 890.107(a), (c).  Subsection (c) of "this regulation channels disputes over coverage or benefits into federal court by designating a United States agency (OPM) sole defendant."   *Empire*, 547 U.S. at 686-87.  "The federal remedies provided to aggrieved federal employees under the regulatory scheme are *the only* intended remedies under FEHBA."   *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 398 (9th Cir. 2002) (emphasis added).

45.     In addition, Congress's intent was that FEHBA contract terms relating to "coverage or benefits (including payments with respect to benefits) *completely displace* State or local law relating to health insurance or plans."  H.R. Rep. No. 105-374, at 16 (1997) (emphasis added).

46.     For these reasons, SCSH's claims for FEHBA benefits are "completely preempted" by FEHBA and are removable under 28 U.S.C. § 1441.  *See, e.g.*, *Botsford*, 314 F.3d at 399; *Center for Restorative Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 06-9985, 2007 U.S. Dist. LEXIS 34833 (E.D. La. May 10, 2007); *Ala. Dental Ass'n v. Blue Cross & Blue Shield of Ala., Inc.*, No. 2:05-cv-1230-MEF, 2007 U.S. Dist. LEXIS 685 (M.D. Ala. Jan. 3, 2007); *but see, e.g.*, *Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5-8 (1st Cir. 2014) (finding FEHBA does not completely preempt state law claims for benefits arising under FEHBA plans).

## D.     At Least One ERISA Plan is at Issue

47.     It has already been established above that the FEHBA-governed Service Benefit Plan is at issue in this case.  So too is at least one ERISA plan.[7]

48.     A health insurance plan qualifies as an "employee welfare benefit plan" under ERISA when it meets the statutory definition of such a plan:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care, or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or

---

[7] BCBSLA anticipates that other benefit claims allegedly assigned to SCSH and at issue in this litigation will be claims pursuant to ERISA-governed benefit plans.  BCBSLA continues to investigate these claims and will supplement to identify other ERISA-governed benefit plans at issue.

2336046.1

> other training programs, or day care centers, scholarship funds, or prepaid legal services or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

ERISA § 3(1), 29 U.S.C. § 1002(1).

49.    Construing this statutory language, federal courts in Louisiana have held that an ERISA-regulated plan exists if there is (1) a plan, fund, or program (2) established or maintained by (3) an employer, an employee organization, or both (4) for the purpose of providing, among other things, "health" benefits, (5) to the participants in the plan or their beneficiaries.  *See, e.g.*, *Dickens v. The Prudential Ins. Co. of Am.,* 2006 WL 845601 (W.D. La. 2006); *Bennett v. Gilsbar, Inc.*, 1998 U.S. Dist. LEXIS 23121 (W.D. La. May 27, 1998); *Godelfer v. Am. Gen. Grp. Ins. Co.*, 1990 U.S. Dist. LEXIS 11728, at *6 (E.D. La. June 27, 1990) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982)).   As the Eleventh Circuit in *Donovan* explained, the gist of ERISA is that a plan, fund, or program falls within the ambit of ERISA protection if the plan, fund, or program covers participants due to their employee status, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program.  *See Godelfer*, 1990 U.S. Dist. LEXIS 11728, at *6 (citing *Donovan*, 688 F.2d at 1371); *see also Egelhoff v. Egelhoff*, 532 U.S. 141 (2001).

50.    In sum, the health insurance plan for C.M., which SCSH placed at issue, is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) because "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."  *See Landry v. Air Line Pilots Assn. International AFL-CIO*, 892 F.2d 1238, 1249 (5th Cir. 1990) (internal quotations and citation omitted); *see also Rollo v. Maxicare of Louisiana, Inc.*, 695 F.Supp. 245, 247 (E.D. La. 1988).

51.     Since SCSH seeks to recover benefits allegedly due C.M. under the terms of her ERISA-governed health benefit plan pursuant to an assignment (Pet. ¶¶ 6, 8-9), SCSH's claim for these benefits is completely preempted and removable under 29 U.S.C. § 1132(a)(1)(B).

## VI.     Removal Based on Federal Common Law

52.     This case also is removable pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction existing under 28 U.S.C. § 1331, because this dispute is governed by federal common law.

53.     In *Empire, supra*, the Supreme Court signaled that FEHBA reimbursement matters will be governed by federal common law if there is a "significant conflict . . . between an identifiable federal policy or interest and the operation of state law."  547 U.S. at 693 (internal quotation marks and citation omitted).  In the proceeding below, federal common law did not govern because the parties' dispute was solely over factual issues and not a conflict between state and federal law.  *See Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 141 (2d Cir. 2005) ("Tellingly, Empire's briefs on appeal fail to mention a single state law or state-imposed duty that runs contrary to the federal interests asserted in this case.").  However, federal common law potentially can displace state law and allow for federal jurisdiction if a dispute exists over the operation of a specific state law that conflicts with the Service Benefit Plan's terms or with FEHBA's objectives.  *See Empire*, 396 F.3d at 150-51 (Sack, J. concurring); *accord Empire*, 547 U.S. at 693 (citing concurring opinion of Sack, J., in 2d Cir. disposition); *see also Blue Cross Blue Shield Health Care Plan of Ga., Inc. v. Gunter*, 541 F.3d 1320, 1322 nn.1 & 2 (11th Cir. 2008).

54.     For example, the Tenth Circuit held that federal common law governed a dispute with a FEHBA administrator in *Helfrich*, 804 F.3d at 1095-1104.  Among other things, the court

focused on the federal interest in nation-wide uniformity in the administration of federal programs such as the Service Benefit Plan. *See id*. at 1099.

56.    A significant conflict exists in this case between the operation of state law and federal policies and objectives because La. R.S. 40:2010, which SCSH invokes as the basis for its lawsuit, purports to negate the Service Benefit Plan's right to pay the enrollee in all instances. Further, application of La. R.S. 40:2010 would also undermine the uniformity that Congress intended for FEHBA plans.

56.    Given that La. R.S. 40:2010 conflicts with the Service Benefit Plan's terms and FEHBA's objectives, federal common law controls this case.  And because federal common law governs, the case raises a federal question and is removable to federal court.  *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (Section 1331's "statutory grant of 'jurisdiction will support claims founded upon federal common law as well as those of a statutory origin'") (citation omitted); *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996) (removal jurisdiction upheld because federal common law controlled dispute); *Rievley v. Blue Cross Blue Shield of Tenn.*, 69 F. Supp. 2d 1028, 1037 (E.D. Tenn. 1999) (in FEHBA case, upholding removal because federal common law displaced state law); *Kight,* 34 F.Supp.2d at 340-341 (same).

## VII.    Venue and Procedure

57.    The Civil District Court for the Parish of Orleans is located within the territorial limits of the United States District Court for the Eastern District of Louisiana.  28 U.S.C. § 98(a). Venue, therefore, is proper in this district under 28 U.S.C. § 1441(a).

58.     Pursuant to 28 U.S.C. § 1446(d), undersigned counsel certifies that a copy of the Notice of Removal will be served promptly on all parties and will be filed with the Clerk of Court for the Civil District Court for the Parish of Orleans.

59.     BCBSLA expressly reserves any and all rights with respect to this proceeding, including, but not limited to, all objections, defenses, and exceptions.

WHEREFORE, BCBSLA prays that this Notice of Removal be deemed good and sufficient, and that Case No. 2017-12476 be removed from the Civil District Court for the Parish of Orleans to this Honorable Court.

Dated: February 21, 2018.

Respectfully submitted,

*/s/ Michael C. Drew*
MICHAEL C. DREW (#30884)
TYLER J. RENCH (#34049)
P. MIKE BOYD (#37046)
JONES WALKER LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-8318
Direct Facsimile:  (504) 589-8318
mdrew@joneswalker.com
trench@joneswalker.com
mboyd@joneswalker.com

*and*

ALLISON N. PHAM (#29369)
CHARLES A. O'BRIEN (#10143)
ELIZABETH P. ODOM (#27044)
JESSICA W. CHAPMAN (#31097)
5525 Reitz Avenue
Post Office Box 98029
Baton Rouge, Louisiana 70898-9029
Telephone: (225) 295-2454
Facsimile: (225) 297-2760
Allison.Pham@bcbsla.com

2336046.1

Andy.O'Brien@bcbsla.com
Elizabeth.Odom@bcbsla.com
Jessica.Chapman@bcbsla.com

*Attorneys for Defendant,*
*Louisiana Health Service & Indemnity Company*
*d/b/a Blue Cross and Blue Shield of Louisiana*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has this date been mailed via e-mail and United States Mail, postage prepaid and properly addressed, to all counsel of record.

February 21, 2018

*/s/Michael C. Drew*

2336046.1